Good morning. May it please the court. My name is Wyatt Durrett and along with my colleagues, Bill Hurd, we represent Mr. Gilliam. The stage for the issues that are before the court this morning were set on an appeal to the tax court from a ruling by the Internal Revenue Service Hearing Office. In that appeal, Mr. Gilliam contended to the tax court that the request for what is called a collection due process hearing that he had made after being served with a notice of federal tax lien was timely. The ruling by the hearing officer was that it was not timely or by the service it was not timely. And because it was not timely, something called an equivalent hearing was granted to Mr. Gilliam. Had it been timely, he would have gotten what is called a collection due process hearing. So the tax court was confronted with an issue as to its jurisdiction. The government argued that because the notice was not timely and an equivalent hearing was held, there was no right of appeal. Mr. Gilliam argued that his notice was timely and the tax court agreed with that and found that the service made a mistake in determining that it was not timely. So the tax court then, in dealing with its jurisdiction, decided that because the service made a mistake, the tax court was not going to deprive the taxpayer of the opportunity for an appeal. And so the tax court ruled that it had jurisdiction and heard the appeal and ruled in favor of the government. The government then waited a substantial period of time, filed its complaint to collect the back taxes. Mr. Gilliam pled the statute of limitations and the district court, there were cross motions for summary judgment filed on stipulated facts. And the district court ruled in favor of the government and ruled that the statute of limitations had been told and therefore the government was timely. Well, are you contesting the applicability of CFR 301-6320 or whether it is a valid interpretation of the statute 26 U.S.C. 6320? Would you repeat that, Judge? Are you contesting the applicability of the CFR or whether it is a valid interpretation of the statute 26 U.S.C. 6320? My follow-up question would be, do you lose if we hold the CFR 301-6320 applies? We are not contesting that it applies. In fact, we contend it applies. And no, we do not lose if you hold that it applies. And the reason is, and that really presents the critical issue in this case. The question before the court and what has to be decided is, based on the tax court ruling that it had jurisdiction to hear the appeal, what is the legal effect of that looking backwards retroactively on what actually occurred? What actually occurred was that the statute of limitations was not told and the IRS engaged in collection activity. Those are the facts. That's what really happened. They engaged in collection activity usually because they accepted a payment from the bankruptcy court. Well, they did a little more than that. Is that right? Yes, sir. They accepted it, but it was because they actively pursued to try to get it and argued that their lien was superior. And that is why they got it. Well, their lien was superior. I'm sorry, Your Honor? Their lien was superior, wasn't it? Well, that's what the bankruptcy court ruled. There was an argument about that. I happened to be the lawyer in that case. You were in the bankruptcy case, too? I was, yes, sir. And we argued that it was.  I'm sorry? You've been in this thing for a while. I was in part of it for a while, yes, sir. We lost that argument, but that is what the bankruptcy court ruled, yes. So in order for the services complaint to be timely, they must prevail on the argument that the legal effect of the tax court's ruling that it had jurisdiction to hear the appeal was to go back and change the equivalent hearing into a collection due process hearing that then told the statute of limitations retroactively when it was not told and when the government engaged in collection activity. And we don't think there is any valid legal grounds for that jiu-jitsu move on the application of tolling. Maybe I missed it, but did you answer Judge Floyd's question about why the regulation doesn't end this case for you? Because the regulation 6320 incorporates 6330E, which then deals with the suspension of the statute of limitations under section 6502. And if things had proceeded as they should have proceeded, if the service had recognized at the time that the notice was timely and granted a CDP hearing, the statute of limitations would have been tolled. Is the regulation inconsistent with the statute, or are you simply suggesting that the two can live in harmony and yet you prevail? I think the regulation, I don't believe that bears on the issues in this case, but I do believe there is some conflict between the regulation and the statute. To us, the statutory scheme is quite clear. What the statutes address when they're talking about suspension of collection activity and the tolling of the statute of limitations. Are you saying the regulation is invalid then? Well, I don't want to go so far as to say it's invalid. I just would argue that it is not a correct reflection of what the statute requires. Now, if that renders it invalid, perhaps. But to us, it's clear that the statute... How about regulations that be consistent with the statute? Well, they do. We don't think this is. And what's your position? Our position is that it's inconsistent with the statute. Then aren't you saying necessarily that it's invalid? If that is the consequence, Your Honor, I have not really thought about that as a lawyer, and so I don't want to go out on a limb and say it's invalid, but that may well be the consequence. I'm not going to argue that point. Your point is we need to focus on the language of the statute, and the language of the statute says that this hearing, the CDP hearing, actually has to have been granted and pending in order for the statute to have been told. That is exactly right. And that didn't happen here. That didn't happen here. That is, to use the cliché, hit the nail on the head as someone else used this morning, that is precisely the argument, precisely the case. That didn't happen here. The trial court utilized two arguments in its opinion to effect a tolling, as though there were a CDP hearing, when that was not the case. The first argument resulted from a framing of Mr. Gilliam's position that was not his position, and that is the argument that led to the application of 7433, and the court found was an exclusive remedy. In stating the predicate for that application, which incidentally no one argued and no one briefed before the trial court, that was the trial court picking that up and utilizing it. But in stating Mr. Gilliam's position, the trial court framed it as though Mr. Gilliam was arguing that if a collection due process hearing had actually occurred, and a collection in violation of the suspension took place, that that would then nullify the tolling. Well, first, that's not Mr. Gilliam's argument because that is not what happened. But secondly, 7433 is an exclusive remedy for damages under certain circumstances, where an employee of the service actually violates a statute. That didn't happen here, and it cannot be interpreted that an exclusive remedy for damages would ever bar a taxpayer from seeking to require the service to do what it is supposed to do, what the regulations or the code applies. The other rationale that the district court employed, which the court acknowledged she could find no authority for, but felt that there was no prohibition against it, was to say that fundamental fairness, a concept of fundamental fairness, required that the statute actually be tolled and be treated as though a collection due process hearing had taken place when, in fact, that did not happen. Our position on that, first of all, is that there is no doctrine applicable in circumstances like these where an amorphous standard like fundamental fairness gives any guidance to a court as to how to deal with a particular situation. Where tolling of statutes are concerned, there is a remedy to deal with particularly inequitable situations, and it's called equitable tolling, and it has a high bar. And it only applies where the proponent of equitable tolling is without fault, and that the circumstances that gave rise to the need for equitable tolling were not attributable to the proponent. And the government didn't plead equitable tolling, and we think there are two reasons for that. One is they couldn't meet the elements of it, but secondly, as we cited in some supplemental authority that we found only yesterday preparing for the argument, the service has previously taken the position that equitable tolling does not apply in tax cases, and courts have so held, including the United States Supreme Court. Well, is there only one request for a CDP hearing? Yes. Okay, so why wouldn't the suspension period relate back to the date the IRS got the request for the CDP hearing? If the IRS had accepted that notice as timely, the tolling of the statute would begin on that date, but it didn't. It ruled that it was untimely. So there was never any tolling during the time that the critical events in this case took place. So unless the court has questions, I would save the rest of my time for rebuttal. Thank you, sir. Appreciate it. Ms. Avetta. Thank you, Your Honors, and may it please the Court. Julie Avetta for the United States. The waters here have been muddied to make them seem deeper, and let us be clear. In this case, there is no question of equitable tolling. There is no question of retroactive application of any statute. There is fundamentally no policy that correlates the suspension of the running of a period of limitations with a stay-on collection in the context of a CDP lien hearing, which happened here. The taxpayer submitted a request for review of a levy in December of 2007. There was no levy in December of 2007 that was subject to such review. There was a notice that a federal tax lien had been filed on the public record, and presumably it was that action of which he sought review through the collection to process procedures. But that wasn't what he asked for. So when the IRS received that request, it said, oh, this is a 6330 levy CDP request. There is no levy as to which this is timely. In January of 2008, beyond the 30-day window during which the taxpayer could have requested a 6320 lien CDP hearing, he did request one, and that came in with respect to a lien CDP notice that he had received in November of 2007. That, when received by the IRS, was deemed an untimely request, but germane. So he was granted what the IRS deemed an equivalent hearing. So at that point, then, once that decision is made by the IRS, the statute of limitations is no longer told. Is that right? An equivalent hearing does not suspend the running of the period of limitations. However, this was not an equivalent hearing, and the tax court so helped. Treasury regulation 3016331I requires to follow the CDP hearing procedures. The only difference between an equivalent hearing and a CDP hearing is in the review rights that the taxpayer has. I understand that. I think it's clear that there's no difference except for the appeal rights, but the statute 6330E1 says that if that hearing is denied and you grant him instead an equivalency hearing, the statute is not told. Do you not agree with that? That is what the statute says. Well, why don't we follow the statute? We do follow the statute, and what the statute directs us to do here is defer to the conclusion of the tax court. But the tax court didn't make any retroactive findings. It simply said that for purposes of the appeal, the notice would be deemed timely. The tax court said that for purposes of its own jurisdiction, the December 2007 6330 request was deemed processable, and its defects were cured by the untimely request for lien review. Therefore, what the IRS had deemed an equivalent hearing was a CDP hearing all along. Where did it say that? Where did the tax court say that? No, no. Where did it say that specific language you just recited to me, that it was deemed a CDP hearing all along? Where did it say that? It didn't say that, did it? It did not need to, Your Honor. When it exercised jurisdiction, it would not have done so. That's your terminology. That is our position, Your Honor, that when a tax court is able to review a hearing that is conducted by IRS employees, that is a CDP hearing. Well, I understand that, and I appreciate that, but I don't want you telling the court that that's what the tax court said, because the tax court said no such thing. Point me to the language where the tax court said there was a retroactive finding of a CDP hearing. The tax court made no retroactive findings. It did not, but it did not need to, because had it not so found, it could not have exercised its jurisdiction over the outcome of that administrative hearing, and it could not have reached a decision on the merits of the liability, which it later did. But it doesn't change, I guess the problem I have with this case is it doesn't change the fact that the tax court, the tax service, not the tax court, excuse me, the service proceeded with an equivalency hearing, right? That's what the taxpayer was granted. The taxpayer had the full benefit of a hearing with IRS appeals. IRS appeals deemed that an equivalent hearing at the time solely because... What was the IRS's position with respect to the statute of limitations at the time that it granted that equivalency hearing? At the time the IRS conducted the hearing and appeals, it did not believe that the taxpayer had made a timely CDP request. So in effect, then, it meant that the service was free to collect, right? As it happens, Your Honor, the service was free to collect either way. Whether or not the period of limitations was suspended during the IRS appeals hearing, the governing provision in Section 6330, Section 6330E, which is incorporated into 6320C, the lien CDP statute, only stays collection with respect to the levy under review. And here, there was no levy under review. There was a notice of filing of a notice of federal tax lien on the public record. That, as the regulation earlier invoked by Judge Floyd makes clear, does not stop collection. A levy or other collection can happen concurrently with an IRS appeals review proceeding, whether you call it a CDP hearing or an equivalent hearing, with respect to the filing of a notice of federal tax lien. The lien statute does not stop collection activity in the nature of a levy or in the nature of a collection in bankruptcy or elsewhere. All that the IRS appeals officer is reviewing is the filing of the notice of lien. Was it procedurally correct? There are a number of errors that they can examine for, and those are not at issue here. The taxpayer is not alleging other material errors on the merits in the IRS. One could not, actually, because that's res judicata at this point. Which brings us back to the tax court, because when he got his decision letter, and that's a term of art. In an equivalent hearing, they issue a decision letter rather than a notice of determination, because a notice of determination is jurisdictional and triggers rights to appeal to the tax court. When the IRS issued what it deemed to be a decision letter, in this case, in December of 2008, the taxpayer then took an appeal to the tax court. Had it been an equivalent hearing, had the service's initial position been correct, he could not have taken that appeal. The tax court could not have heard his suit. Well, he had a right to challenge the service's determination that his request was untimely. That was the very purpose of taking the appeal. In an equivalent hearing, he would not have had that right, Your Honor. In a CDP hearing, he would. That was why the IRS moved to dismiss. The tax court, in order to decide its jurisdiction, had to make that determination. But the fact remains that the service had determined initially that this was not timely. Therefore, it was an equivalency proceeding. Let's stop there. Why not just read the statute? It seems to be pretty clear that the limitations period shall only be suspended during the period during which a CDP hearing is granted. No hearing was granted for that interim period of time. Tax court decides otherwise. Statute begins to be told again. Respectfully, Your Honor, that's not the outcome of the tax court's decision. I know that's not the outcome you prefer, but why is that not correct? That's not the outcome, as a matter of fact, or of law. It's not our preference. It's simply the record. The tax court necessarily had to find that the hearing was a CDP hearing, that the outcome was a notice of determination in order to exercise its jurisdiction. That was absolutely foundational to its finding, even if it was not explicitly stated, even if they focused on the processability and the administrative propriety of the treatment of the early requests. The effect of this was the tax court gave the taxpayer the entirety of the difference between a CDP hearing and an equivalent hearing, which is review by the tax court. And once he got that, there is no basis to look back at what had happened and say this wasn't a CDP hearing all along, because the only distinction between the two, Your Honor, is the right of review. The regulation requires the IRS to give an equivalent hearing. The choice of the word equivalent is very deliberate. You're getting a CDP hearing in everything but review rights. Yeah, I'll admit this is a very odd statute, because I agree with you. There's no difference in the procedure. It's just a question of who gets to review the decision. And I accept that. I appreciate that. But the statute just seems to suggest that during the time that the service makes that determination incorrectly, it turns out, the service should be bound to recognize that the statute of limitations has continued to run. What the service is bound by, Your Honor, we would lean here on the principle that what is sauce for the goose is sauce for the gander. And if the taxpayer is able to receive the benefit of a tax court appeal, and ultimately an appeal to the Ninth Circuit, because this is effectively treated as a collection due process proceeding ab initio, the government is also entitled to treat this proceeding as a collection due process hearing ab initio, and that includes the suspension of the running of the period of limitations for the entirety of the administrative proceeding, from December of 2007 through March of 2013, which is a total of 1,913 days, which extended the period of limitations all the way through October of 2015. And that's really the only issue before this court on appeal, whether a complaint filed in September of 2015 was timely filed. And for this reason it was. For this reason it was. The government does not seek any sort of equitable tolling. Taxpayer has not alleged what we are seeking to toll equitably. All of the tolling here has to do with the suspension by statute of the running of a statutory period of limitations. There is no overarching policy that any time that the period of limitations is suspended by statute, collection must also be suspended. There are a number of provisions that do correlate the two, but 6320 and 6330 do not. They decouple them, and that's important here, because whether or not there was levy action, whether or not collection was happening through a bankruptcy, whether or not the government was receiving any funds and applying them to the tax liabilities in dispute, all that was serving to suspend the running of the period of limitations during the CDP hearing was with respect to the notice of federal tax lien, which puts us in the 6320 rather than the 6330 box. And that's the regulation that you recognize. And, Bobham, you say that since the tax service got it wrong and tax court said he was entitled to a CDP hearing, to use your words, everything goes back to the date he filed his request. That's correct, Your Honor. It was a CDP hearing all along. The tax court so held, and we are bound by that. And taxpayer is bound by that, and he's judicially stopped from changing his position to one more favorable to him. He came into the tax court and said, I should have CDP rights. And the tax court said, you're right, you should. And so he did. And the CDP rights of the taxpayer correlate to the suspension of the period of limitations on behalf of the government. We would add also that the cases that were raised in the 28J letter filed yesterday speak to the unavailability of equitable remedies when you're within a statutory framework. And from that perspective, we would submit to the court that those cases actually favor the position of the government in this case. We are not invoking equity. We do not seek to invoke equity. In our view, they're not. But if you were to read them generously, they would be more supportive of our position, which is that there are no equitable exceptions to this statute, which says that during a pending CDP proceeding, which goes from an equivalent hearing through tax court review, through review in the Court of Appeals, and that's where this one ended, the period of limitations on collection of the liabilities at issue, which here were those named on the notice of lien, not with respect to any levy. Is the tax court ruling like law of the case? Is that what you're trying to tell us? We would prefer to treat it as res judicata. Res judicata? Yes, Your Honor. Law of the case would imply that it was a previous stage of this proceeding, and this proceeding is actually a separate one. This proceeding flows from, it's all the same years. It's all the same tax liabilities, Your Honor. That's correct. Same amounts of money, same dispute over taxes, due and owing, and all that kind of stuff. Yes, that's right. But you don't think law of the case is the right term? Because this is not an appeal from the tax court. Pardon? This appeal is not taken from the decision of the tax court. But what the tax court was considering was whether the Office of Appeals at the IRS abused its discretion in denying the taxpayer relief from the filing of a notice of federal tax lien. The relief sought here in the district court involved the reduction of the assessments of liability against the taxpayer to judgment, 1993 and 1995. That's what I thought. Yes, that's correct. And the government in the district court suit had until October of 2015 to seek the relief that it sought in the complaint that is the subject of the instant appeal. When in October did you say it was? The expiration date for the period of limitations was October 20th by our math, and the complaint was filed September 30th. And for that reason, it's our position that the complaint was timely filed and that this court should affirm. Thank you very much. Mr. Durrett? Yes, sir, thank you. I think the questions and the exchange have clarified our focus a bit. So I want to start with emphasizing two things. One, in the complaint from which this appeal occurs, the government pled as follows. The service denied Mr. Gilliam's request for a collection due process hearing as untimely, but nonetheless granted him an equivalent hearing. In the joint stipulation of facts, number 11 on page 36 of the joint appendix, the service denied Mr. Gilliam's request for a collection due process hearing as untimely, but granted him an equivalent hearing. The equivalent hearing was held. Procedurally, is there any difference when you sit down and have the CDP or the equivalent hearing? In terms of the procedural rules that govern them or the rules of evidence that govern them, no difference at all. The difference is the name at the top and the remedy, a review remedy. It's the review remedy and whether or not the collection activity is suspended and the statute of limitations told under 6320, which incorporates 6330, which suspends the collection activity in 6503, which tolls the 10-year statute in 6502. That is clearly the difference. The government has to convince you that either by necessary implication from the tax court's ruling or some other yet-to-be-defined doctrine of law that you can retroactively change what the government stipulates was an equivalent hearing into a collection due process hearing. Well, the tax court ruled they were wrong, didn't it? I'm sorry, Your Honor? The tax court ruled that the government was wrong. Tax court ruled the government was wrong. Absolutely. And the tax court, and this bears further emphasis, the tax court was confronted with a real-time prospective issue. The government had moved to dismiss the appeal on the basis that the tax court did not have jurisdiction. So the tax court had to decide, do I have jurisdiction? And in order to do that, it had to address, as Judge Diaz pointed out in his questions, it had to address whether or not the notice was timely. And so the tax court simply decided that because the service got it wrong, he was going to accept jurisdiction and not deprive the taxpayer of his appellate rights. But what doctrine of law then takes over? The tax court ruling was not appealed. The tax court ruled that he had jurisdiction to hear the appeal. The tax court ruling that you're talking about was never appealed by anybody. Well, it went up to the Ninth Circuit, but it was not prosecuted. The substance of the tax court ruling, if you're out of review, directing it to the notice being timely, that is correct. That was never appealed by the service. So that issue was not appealed. And the service then waited over almost three years before it filed a complaint. And that is why the issue that is before the court is before the court, because the service cannot prevail that its filing was timely unless there is a doctrine of law that applies here in some way to allow the courts to, in effect, go back in time and change what actually occurred into what perhaps should have occurred. But the problem is, not only did the government decide to grant an equivalent hearing, and as the statute makes clear, collection activity is not suspended. Recognizing that, the government then went forward with collections. And as you asked me about Judge King, they did so by prevailing that their lien was entitled to priority before Judge Wade in the bankruptcy court, and therefore they were able to get the $614,000. Clearly, both the, on page 399 of the appendix, the service acknowledged that it collected by lien and not by levy, and Judge Wade held it collected by lien and not by levy. In this proceeding, the service has attempted, for whatever its reasons are, to recharacterize its lien collection into a levy collection by jumping on the regulation that seems to suggest that all collection is not suspended and that they could collect by levy. No matter how you feel about that, it doesn't matter to the outcome of this case. Because for that to become an issue, you have to first agree that there is a legal basis for the retroactive application of tolling to that time period. That is so critical in this case. There are a couple of other points that I should make in rebuttal. While it was only mentioned casually in the discussion, the service has contended that somehow, in this case, the doctrine of collateral estoppel or judicial estoppel applies. It doesn't. Gilliam's position has been consistent, and it's only been one position, and that is that the notice was timely. And that is his position in this case. The framing of the collateral estoppel or judicial estoppel arguments presuppose that Gilliam has previously argued that there was a collection due process hearing, and now he cannot argue that there was an equivalent hearing. That is absolutely not the case. There is nothing ever cited to show that that was the case. That is just another version of the implication from the tax court's ruling that somehow, because Gilliam argued that the notice was not timely, that the effect of the tax court ruling has Gilliam arguing that what he had was a collection due process hearing. Everything depends on how that is interpreted and how this court rules about retroactively changing what actually happened into something that didn't happen in order to give tolling to the service. I see my time is up. Thank you very much. Thank you, Mr. Garrett. Appreciate it very much. We'll come down and re-counsel and adjourn court until 2.30 today. This honorable court stays adjourned until this afternoon, 2.30.
judges: Robert B. King, Albert Diaz, Henry F. Floyd